to the first case 20-3706 CV Amarpreet Dhaliwal v. HYPR Corp. and George Avetisoff. I understand that we have Mr. Silver for the appellant and Mr. Bach for the appellee. Is that correct? Yes, your honor. Yes, your honor. Very good. And I can hear you both. So I think technically we are all ready to go. Mr. Silver, I understand you would like to reserve two minutes for rebuttal. Is that right? Yes, that's correct, your honor. Very good. Mr. Silver, then would you like to proceed? Yes, your honor. This appeal arises out of what we respectfully submit is the misinterpretation and in fact overthinking of what is essentially a very of the express terms of a very simple written agreement and the insertion of terms that simply are not there. By way of background only, Dhaliwal and Avetisoff were two young guys who, as the court acknowledged, analogized themselves to Mark Zuckerberg and believed they were on the verge of a technology akin to the next Facebook. And they wanted to enter into a written agreement so that either could pull a Zuckerberg or meaning exclude the other. But one need not go beyond the purpose and the effect of that specific agreement locks up the percentage and method of co-ownership, 50-50 ownership of what the parties believe was extremely valuable IP, namely what they refer to as the hypercard or the hypercard project. Every term of that agreement addresses and exclusively addresses the percentage and manner of the co-ownership of the hypercard project so that each party is sufficiently locked up and cannot take it and run off to the exclusion of the other. And that's it. The agreement... Counsel, does the present business in any way, any particular way, resemble the original hypercard project? The present business? Yes. The present business... That's what we want a piece of. Well, the present business has changed because the agreement was entered into in 2014. The breach occurred, the agreement was entered into April 30th, 2014. The breach occurred by like May 23rd, 2014. Damages are determined at the time of breach. So to look what happened over the next five or six years, we respectfully submit is irrelevant as a matter of law. Well, what was the project worth back then? Back then... Was there a product? Well, here the issue is stock. What we're asking for is stock in the corporation. So basically, you want the present value of the corporation? No, Your Honor. What we're seeking is stock. We cite cases that when the relief sought is the proper remedy. That's not damages. You want specific performance. You don't want damages. I thought you just said you want damages measured as of May 23rd, but now you're saying you don't want damages. No, we specifically requested the stock at trial. We specifically request stock in the terms of specific performance. And if I didn't make that clear, I apologize, but that's always what we've and we cite cases as to why we believe we're entitled to specific performance. And so getting back to the agreement, if you look at just the clear terms of the agreement, it's not an employment agreement. It's not a partnership agreement. It's not an operating agreement. It's a technology lockup agreement. Yet with all due respect, the district court went on to misinterpret the plain language of the agreement as being all those things and substituted its judgment, point of view, sense of logic and fairness. Counsel, is there an integration clause in this agreement? No, there's no integration clause in that agreement, but that under the applicable law, under your view, what's the consequence of having no integration clause? We cite cases that it doesn't mean that it doesn't mean that it's not integrated just because it doesn't have an integration. But it may or may not be right. That's a fact for the district court. Would you agree? I don't agree that it is because the first thing you have to do is interpret the contract correctly and an interpretation of the contract. Interpreting a contract is a question of law. And our view is that because the district court didn't interpret the contract based on its express terms for what it is, which is a technology lockup agreement, it went off on a tangent and started interpreting the contract as what it is. And if you look at the contract specifically for what it is, it clearly achieves its purpose, which is to say, this is the technology. We're co-owners. We own 50%. This is the mechanism by which we're going to own the 50%. And this is how it's going to be divvied up through this company, Brillex, where Avetisov will transfer 50% of Brillex to Avetisov to Jollywell for a dollar. Well, we have a finding. We have a finding that your client failed to perform under the contract and that that excludes that excuse performance on the other side. And this is, there was a bench about that, other than going back to the wording of the contract that it is found your client did not perform. Well, he, he found our client didn't perform based on things that weren't in the contract. The contract didn't require, like I said, it's not a partnership agreement. It didn't require Mr. Dollywell to book, to, uh, uh, that required your clients do nothing more than pay a Yes. That's, that's my view of the, that's the view of the contract. I'm sorry. I'm talking over you. Um, it was rejected. That was a construction of the contract that was rejected. And since it comes close to bordering on the absurd, it, it's difficult to help, to help you out. If you look at the express terms of this contract, the purpose is clearly to distribute ownership of what the parties thought was valuable IP, and they entered into an agreement for that reason. Well, wasn't there also a finding of fact that this was a Venisov's idea in the first place, and it wasn't your client. That's a finding of fact. It's irrelevant though, to this contract. But then it comes down to a dollar. So your principle, your, your approach here, unless you're going to attack the findings of fact is clearly erroneous, is that this is an idea that your client did not come up with. And that Mr. Venisov was willing to part with 50% of the value of his company for absolutely no contribution by your client at all in terms of ideas or performance of anything. But he was happy to hand over half of his future company for a dollar. And that's what you want us to think is true. Well, I, we do argue, we do argue clearly erroneous, but we do think that there's some sanctity to the contract itself. And obviously, there's a reason why these parties entered into this contract. And, and if you look at the contract itself, the whole point was for these... If one party did nothing but pay the dollar, and the other party did nothing but received the dollar, what, what value would the corporation have? Well, it, it doesn't make a difference. The point of it was that they were each supposed to co-own this property, this property so that neither could run off without the other. But that's the whole point of finding that it's not integrated, is that there was more to the outcome. No. And that, I know you were arguing that that's not the case, but you have a contract without an integration clause, and you had a trial at which findings were made that there was more to the agreement. And I'm not, I'm not sure how we identify error in that conclusion. The error is in the interpretation of the agreement. If you look simply at the interpretation agreement, it does exactly what it sets out to do. I'm sorry if I'm not being clear, but the agreement was found not, the, the document was found to be not the entire agreement. It was not found to be integrated. But that would, but first of all, there was no legal analysis on that. Why is it an error of law to find that it wasn't integrated? Well, first of all, it's an error of law because there was no legal analysis at all about why it wasn't integrated. That's a complaint that you, you're saying the district court didn't analyze it. That doesn't mean it was wrong. Oh, well, it's wrong because if you look at the agreement, it has every single thing in it you need for an integrated agreement. It says the parties agree of a specific, a specific item. It has a specific subject matter. It has specific things that need to be done in order to establish it's perfect, it's purpose. So looking at it itself on its face, it's clearly an integrated agreement. The purpose of it is to, the purpose of it based on the proper interpretation is to distribute ownership of, of the IP through this corporation. And that's exactly what it does. There are no other terms needed for this to work. So Mr. Silver, you've reserved two minutes for rebuttal. Would you like to use any of that time now, or would you rather save that for rebuttal? I'll save it for rebuttal. Okay. We will hear from counsel for the appellee, Mr. Bach. Good morning. May it please the court. I'm Jonathan Bach. I was counsel for appellees at all prior proceedings. The law is clear. It's set forth in this court's decision in Bourne versus Walt Disney, a case cited in our papers. There, this court held that when a contract lacks an integration clause, the court must look to, quote, surrounding circumstances, close quote, to determine whether the contract is complete and what the intention of the parties were. That's the clear, undisputed law of this circuit. When the court looks to surrounding circumstances, the inquiry is inherently factual. And this court, of course, applies a deferential standard of review, whereas here a district court has held a full trial and made findings of fact. This was a fact intensive case. It turned on extensive witness testimony and documents. And plaintiff appellant asked for that factual inquiry to take place. In response to a motion to dismiss that I submitted on behalf of my clients, he responded at docket 23 by attaching documents to show extra contractual proof of his client's performance. And he argued that cases like this should not be decided on a motion to dismiss or on the pleadings or as a matter of law. He said he wanted to adduce evidence of his client's performance before and after the contract was formed. That was his docket 23 submission at pages 11 and 12. So we had a five day trial. Judge Daniels was extremely deferential to the plaintiff. He was his only witness. He allowed in every piece of evidence over defense objection. And the court found that Mr. Dhaliwal, the plaintiff, walked away from a joint project having contributed nothing. And despite open invitations in text to remain involved and breached an understanding that he was expected to share the work going forward and have some role. Those were the findings. They were made by the judge following a trial and those findings control in a case governed by a contract that lacks an integration clause. The evidence was overwhelming. When the contract was formed, the parties went to a whiteboard and drafted their respective roles on the whiteboard. That's in the appendix that we've submitted at appendix 1239 to 1242. They did that at the moment of contract formation, and they took pictures of what they had drafted on the whiteboard to memorialize it. And Judge Daniels appropriately found that there was understanding that at the very least, they were going to work together and share the work. And that the plaintiff would have to contribute something more than just the dollar, which, by the way, there's no factual finding that he ever contributed, to earn the right to claim any kind of contractual entitlement here. That's where we believe the record stands. We think the trial was fair. We think the record is clear. And this court can affirm those findings on any ground. As Judge Jacobs noted, HyperToday bears no resemblance whatsoever to the project that Mr. Avetisov and Mr. Dhaliwal discussed way back when they met at the Bitcoin bar. HyperToday has nothing to do with a card. It has nothing to do with something unconnected to the internet. It has nothing to do with cryptocurrency or Bitcoin or any of these trendy new consumer transactions we read about. HyperToday is a sophisticated software company that provides services to enterprise clients. Mr. Dhaliwal is not entitled to 50% for merely sitting on his hands. I have nothing further unless the court has any questions. Thank you. Let's see, Mr. Silver, you've reserved a couple of minutes for rebuttal. We'll hear from you. First of all, there's no dispute and even the court acknowledged that the project stayed the same for several months after and was the building block for what continued. It's not Mr. Dhaliwal's fault for what happened after as he was excluded. And also any kind of finding that Mr. Dhaliwal did not do what he was supposed to do or anything like that after the agreement was signed on April 30th is clearly erroneous. Because based on the timing itself, April 30th, the agreement was entered into. May 6th, Vedasava gets the documents to transfer over interest in Brillex to Dhaliwal. But he doesn't do it. And by May 14th, he decided that he wasn't going to do it. By May 23rd, he's talking to his childhood friend about doing with him instead. And then by June 3rd, they incorporated Hyper to do exactly the same thing that Mr. Vedasava was supposed to be doing with Mr. Dhaliwal. This was all within a couple of weeks. It's a clear breach. They had an agreement together to be able to divide up this IP. And then it was so good that Vedasava just went off and did it with somebody else. And he breached the clear terms of the agreement within a couple of weeks. There was no time for anything else to happen. But most importantly, the agreement is the whole purpose of that agreement. That's not a characterization of the trial record in the light most favorable to the court's findings. I mean, the findings were that there were repeated efforts to contact your client to try and get him to provide the material he was supposed to. And he was either not responding or certainly not providing any material. That's the basis for the breach finding. So the suggestion that they just ran off and negotiated with somebody else and left your poor client unaware of what was going on is not, I think, a characterization supported by the record. Am I wrong? No, the record does state that by May 23rd, by May 14th, Vedasava alerted his accountant to not transfer the... Before there was contact with your client urging him to provide information, and he just didn't respond to any of it. That was afterwards, though. That was after. That was after. They were still talking to each other at the same time that Mr. Vedasava decided that he wasn't transferring over. And if you look just at the... My point is basically, if you look at the agreement itself, he didn't do what he was supposed to do under that agreement, and he decided not to do it within two weeks after it was drafted. And that wasn't sufficient time for him to just say, OK, I'm taking this IP that we've agreed is 50% owned, and I'm just taking it for myself. And that's it, because I don't like the fact that Mr. Dhaliwal isn't doing things that I thought he was supposed to do that aren't in the contract. Thank you very much for your time. I greatly appreciate it, especially under these circumstances. Thank you to both counsel. We will reserve decision.